So we'll begin first with case number 21-6586, Dinn v. Garland. Good morning, your honors. May it please the court. My name is Michael Goldman, the attorney for petitioner appellants. The critical issue in this appeal is whether DHS has satisfied its burden to demonstrate that petitioner appellants received sufficient notice of the consequences of filing their frivolous asylum applications. We submit on the record before this court the answer to that question is no. Now matter of YL is the leading BIA case which sets out the four factors which must reflect, which must be demonstrated to come up with a conclusion that a frivolous asylum application has been filed. We are only contesting that the first factor is at issue here. May I also be clear, you're not challenging the alternative ruling denying the change in status, is that correct? Well that's an important question, your honor. Our position is, number one, that the immigration judge did not have the authority under U.S. code to enter an alternative discretionary determination. Because under the U.S. code, once a frivolous finding is made, no benefit can be given to an alien. We don't agree with that. Is there any other basis on which you would challenge the change in status? Well yes, your honor. Even if you disagree with our position that the immigration judge did or did not have that authority, we would put forth that if you were to agree with our position that DHS did not satisfy its burden, remand would still be appropriate because the judge's allegedly alternative determination is entirely consumed by really his finding concerning the frivolous asylum application. It's very short. He doesn't really conduct a full analysis of the positive and negative equities. It's really just a recitation of his concerns concerning the frivolous asylum application. I don't want to distract you too much from the argument I interrupted you on, but I'm not sure I completely follow this argument because the judge did find that the plaintiffs lied at the hearing, which would be a separate falsehood from the one you're saying drove the decision. I mean, that would be a pretty significant fact in a determination like this. Absolutely, your honor. But if this court were to agree that the DHS did not demonstrate a key factor here, that my clients did not understand the consequences of that action, that really undercuts the entire frivolousness finding, and I think remand would still be appropriate. Well, that goes to whether it's going to be a lifetime bar or a 10-year bar, right? The adjustment of status is the 10-year bar. The frivolity determination is a lifetime bar. Frivolity determination is a lifetime bar. If that didn't exist, they presumably would be eligible for adjustment of status. In 10 years. There would be no bar. Well, a waiver would need to be filed to account for misrepresentations, but there wouldn't be a 10-year bar. So just returning to my principal argument, the matter of Y.L. sets forth the four factors. It states that the burden is on DHS to show by a preponderance of the evidence that frivolousness has been established. Now, the government makes two broad arguments in its brief as to why it has satisfied its burden. First, it understandably cites to this court's decision in Niang v. Holder, which specifically stands for the proposition that a signature on an asylum application generally reflects sufficient notice. However, this court in Niang expressly left open the question as to whether that ruling should extend where an applicant did not receive or was unable to understand the warning that appears on the signature page of the asylum application form. We think this is a good extension of the law, proper and logical, especially in light of the fact that DHS does have the burden in these types of cases. And we also submit that the record is clear that our client, my client- Absolutely, Your Honor. So when does the burden shift in your framework to the government? Well, the issue here is that the case law really hasn't addressed the burden. None of the cases, Niang and the cases cited by DHS, really don't discuss the burden. But in our opinion, it would be, you know, if Niang stands for the proposition that the government has satisfied its burden, it also left open the possibility that if there are allegations showing that someone could not have possibly understood what, you know, what is on the asylum application, that that Niang presumption should not apply. So, yeah, I understand that, I agree with you, Niang left open that issue in the footnote. And I guess my question is, how does this work then under your argument? If, couldn't any petitioner argue that they did not understand what they signed? And then under your framework, it sounds like you're saying then the government has to prove, no, in fact, they did understand. I don't think it would open, you know, no, not every, it would have to be on the record. It would have to be based on testimony established before the immigration court that someone did not speak English and that they were not, they did not receive these warnings explained to them or translated to them by their attorney. And those facts are on the record here. Well, now the attorney says he read it to them, and is it your client's position that, well, he read the application to them, but he didn't read the warning? In essence, yes, Your Honor. His specific language is he reviewed, explained, and read the contents of the asylum application to them in Urdu. It doesn't say anything about the frivolous warnings. But even if it was deemed ambiguous. I mean, there's no reason to exclude that from what the attorney said. No, it shouldn't be excluded, Your Honor. But if it's deemed ambiguous, Your Honor, we still submit that it is not sufficient to satisfy burden of proof based on preponderance of the evidence, which is more likely than not. Counselor, you're saying there's no direct evidence that the lawyer spelled out the warning to his client. That's correct, Your Honor. There's direct evidence that he generally read the entire document to the client, but nothing specific about the notice part. That's correct, Your Honor. I'm sorry, Your Honor, I didn't hear or understand your question. The frivolous warning notice, Your Honor, is on the signature page of the asylum application. It's on the last page. I would also just note that the letter was not relied by the immigration judge in finding that petitioners received the frivolous warnings. It was perhaps the shortest portion of his oral decision. He simply relied on Yang. May I just be clear as to how the record developed here? Your clients testified that the previous attorney told them that they would be using fabricated claims. The IJ then got a letter from prior counsel stating that he had reviewed the application with them in their native language. To the extent you're now saying, well, that doesn't make clear that he reviewed the warnings with them, was there an opportunity in the record to respond after this letter was received to tell the IJ, well, we didn't get the warnings? I didn't see that, and I want to know, to the extent you want a hearing, was there already an opportunity to have this matter addressed? My understanding is I was not the attorney, but the letter was written in response to a bar complaint that the appellant petitioner's former attorney filed. I understood that. Then that came before the IJ, and my point was, would there have been an opportunity to say to the IJ, yes, but we didn't get the warnings part of it? Or no, we don't agree with this at all, we didn't get any of it translated for us, or whatever your client's position is. There really was no testimony taken. I understand, but was there an opportunity after this letter was received by the IJ for your clients to dispute it? Well, I think they did dispute it in essence. There was a lot of back and forth in open court about, I mean, they put a lot of blame on the attorney misleading them. Yes, but they were not credited. Correct. So I'm trying to figure out what it is you want now to have the IJ decide on remand. Well, if this court agrees that DHS did not satisfy its burden to show that petitioner appellants did not receive sufficient notice, the remedy would be to remand. The immigration judge could take further testimony on that factor. From whom? From my clients. Well, and that's my point. Did your clients already have the opportunity to put forward whatever you're saying they now want to put forward on remand? Arguably, they had an opportunity, but neither their counsel nor DHS counsel nor the judge inquired about the circumstances specifically as to whether they received the frivolous warning advisers. It's not in the record. Thank you. Mr. Durant. Your Honor. May it please the court, Ted Durant on behalf of the United States. The agency made two dispositive decisions in this case. First, that petitioners filed a frivolous asylum application. As such, they're ineligible for relief. And in the alternative, that even if they were eligible for adjustment of status, they did not merit it as a matter of discretion. That is clear in the record. That was clear from the judge's decision, from DHS's brief to the board, and by the board. Petitioners did not exhaust that to the board, and they did not raise that in their opening brief to this court. And moreover, the discretionary determination is one which this court does not normally have jurisdiction. So this court should and could dismiss this case on that ground alone. But your adversary argues that it's the agency that didn't have discretion. Do you have a response to that? It was acting ultra-various. Your Honor, this was in his reply brief. And again, never before the- Assuming we were to consider it, do you want to rely on waiver? Or do you have a substantive response to that argument that there was no jurisdiction to consider it? Well, there is. They didn't exhaust it. They waived it. And then it's ultimately discretionary determination. In Petitioner's argument that the agency couldn't do it, I've been unable to find any case law, circuit law, board practice. I mean, the court's always, always ruling alternative. It goes to eligibility and then discretion. For example, cancellation of removal. A lot of times somebody's eligible, but it's denied as a matter of discretion. Asylum too, when they've done it here. And Petitioner has not cited anything in his untimely response. The court should not consider it. And if the court agrees- I'm sorry, Your Honor. Can you hear me? Yes, Your Honor, I sure can. Yeah. On the question of notice, is it your position that the signature is conclusive on that question? Or that the signature raises a strong presumption of notice and receipt of notice, but it can be rebutted? Under this circuit's case law, Your Honor, I would say that it's conclusive of notice. The governor has cited two cases from this court since Niang where the non-citizens claimed they did not understand the warning that was given to them. And in both, I think it's Jiang and Zheng, the court said no, the immigration judge is not required to credit the Petitioner's explanation, especially after they've been found not credible. And in this case, we also have the letter from Petitioner's former counsel saying, yes, I read this to them. I read their assumption. That sounds to me like it is rebuttable. And in those cases, the Petitioner couldn't rebut it. Under this court's case- As opposed to a situation where there's a signature and the Petitioner's taking the position that he didn't understand English and his counsel didn't explain it to him. That didn't explain the warning to him. In which case, then, presumably the signature would be meaningless if, in fact, he didn't have a warning. On the warning issue. Under this court's case law, Your Honor, the warning is enough. The written signatures are enough. Under this court, even though- The written signatures are the warning, so we don't have to pay any attention to language. The inability to understand. It's just, it's in English and that's enough. Under this court's current case law, they left it up in a footnote at the end of Niang that they had not addressed it. But this court has addressed that same argument in two subsequent cases and have rejected the Petitioner's arguments, not having to credit their explanation as the judge found them incredible. So how would a Petitioner assume that the claim is true, that the Petitioner didn't understand English, and that the lawyer didn't read it to him, to them? How are they to raise that claim? They signed it, tough luck. Is that the government's response? I'm sorry, Your Honor? How are they to raise the claim? What's the process here, the framework for evaluating that claim? It sounds like you're saying tough luck, they signed it. They can raise it. I'm not saying tough luck, I'm saying under this court's case law, and it did leave open the question of Under this case law, what? Under this case law, tough luck? No, under this case law, the court has said that the signatures are enough. And we're suggesting to you that there might be a case in which it is true that the lawyer did not read or translate the warning. Is a Petitioner who signed it without understanding what he was signing have no ability to point out that this was not translated for him? He can point it out, and Petitioner has. And certainly the Board did not act appropriately by relying on Niang under this court's current case law. Now under this particular case, we have the immigration judge finding them incredible. They've omitted line throughout the hearing. And also we have the letter from Petitioner's counsel, which the judge did weigh. So if the court wanted to go further. As I understand this scenario, this is a situation where the lawyer and the defendants knowingly submitted a false application. Is that correct? Am I correct in that assumption? This wasn't just that the applicants lied. The lawyers, the lawyer knew that they were lying. Well, they're saying that he lied. They're saying that he lied. I don't think he's admitted anywhere that he concocted this. That's not what I see. They're putting all the blame on him. It could have just as easily been something they told him from the get-go. As I understand it, the attorney was charged with this by a number of immigrant applicants. Is that correct? Of telling them that they should falsify this? Or am I misunderstanding? I'm not aware of that, Your Honor. If it's in the record, I didn't see it. What happened at the disciplinary proceeding that the letter was submitted in? It is my understanding, and again, Your Honor, I don't believe that discipline was found or that fault was found. And again, please forgive me, I'm not familiar with that. I do remember, I think I recall reading that. Well, I think the concern you're hearing from us is the lawyer said he read the application. On what basis should we find that that included the warning? I think it's if he indicates that he read the entire application to them. Well, did he say, I read the entire application? I thought he said he reviewed the application with them in their native language. He did, and I don't think it, I mean, I don't know if it makes sense that, and I also reviewed the frivolousness warnings. Is your argument that that's enough to then create a presumption that he read the entire application, ball back in the applicant's court? Yes, and when the immigration judge looks at all the evidence in the record and also petitioner's credibility, he doesn't have to credit their explanation. Well, your adversary is saying this is not clear enough. This is not clear enough that he read the warning, and it should go back for that purpose. What's your response? Well, my response is, first of all, the court never has to get to the frivolousness argument because his case falls on the discretionary argument. But that's a 10-year ban, right? It would be. It wouldn't be permanent, unlike the frivolousness case. Right. Are you satisfied with the 10-year ban, and we don't have to decide this at all? I'm saying the court doesn't have to. It can rule in the alternative like the agency does and find. But the consequences are different. The consequences are. So what do you want here? You want us to just rule on the alternative ground, and then they'll be banned for 10 years? Are you satisfied with that? Whatever the court would like to do, but there's two hurdles. I see them. I have two minutes. No, take a little more time. That's not a very satisfactory answer. The real question here, it seems to me, and there's another wrinkle, by the way, is whether or not there should be some kind of a hearing, an attrition of whether or not he understood what he was signing completely with regard to the warning. And if that's the case, isn't it also relevant that the lawyer who testified here that he read everything to him himself is criminally involved in this and therefore would have an incentive perhaps to lie for those circumstances? I mean, his credibility might be at issue. But I don't understand your position on the question of the notice in terms of what you believe the law is or should be where it isn't established. So if I understand your question, Your Honor, what I believe the law is in the Second Circuit respecting notice is two signatures on the bottom of this asylum application. Which is what the board relied on. If, in fact, and then they left up the question of her future date on notice. So the board really didn't consider whether or not the signature was a rebuttal presumption. It just relied on it. It relied on that case law. But in a few cases subsequent to Niang, where the non-citizens made similar arguments to the petitioners here, the court said, yes, I know you said you don't understand it. But you've both been found not credible. The judge doesn't have to credit what you're saying. You know, false in one, false in all. And here we have petitioners throughout the hearing compromising the integrity of the immigration court by lying on the record and making up this scheme that they were. OK. Counselor, I want to go back to what Judge Radji said earlier. If hypothetically, let's just say hypothetically, there's a case in which a signature is on an application. The contents of the application contain a warning and there's no proof that the lawyer read the warning to the petitioner. And the petitioner is taking a position with new counsel that he didn't read the warning, that warning to him. There's no recourse in your conception of the legal landscape and the facts of a case like this. There's no ability for the petitioner to obtain relief if, in fact, he has not read the warning. Under a case different than this, maybe if they were honest all along and they had not contradict themselves numerous times, perhaps. There should be an opportunity at some point. Generally, I mean, we don't just write opinions for the case. We write the opinions because they're pressing. And you're now conceding that this should not be a rule that the signature is in every case binding. I'm not conceding that, Your Honor, based on this court's law. If the court would like to go further, that's its prerogative. But I'm saying under the current case law, the signatures are dispositive. Now, and I see I'm out of time, Your Honor. I'd just like to say two dispositive issues. He never exhausted the first or challenged it. The court should dismiss the case on that ground alone. Thank you, counsel. Thank you. Briefly, Your Honors, on credibility, the government obviously hits the appellant petitioners on credibility. We do not run from those bad facts. But negative credibility alone cannot lead to a finding of frivolousness. Under the four factors laid out in Y.L., the second and third factors account for credibility concerns. If credibility led to frivolousness, the first factor that we're really arguing over today would become superfluous. In conclusion, case law shows that an ambiguous record should inure against the party with the burden. Here we submit the record is not ambiguous. Rather, there is no direct and specific evidence that my clients were aware of the consequences of submitting their false asylum applications. But even if it was considered ambiguous, if we took into account that attorney letter, which really is the only record evidence, the result should be the same if the burden of proof is to be applied faithfully. With that, I rest. Thank you, Your Honors. May I just ask you one question before you sit down? Sure. Insofar as you are arguing about this inability to rule in the alternative, ACFR 1240.123 specifically says that the immigration judge is authorized to issue orders in the alternative, or in combination, as he or she may deem necessary. The agency in matter of XMC has held alternate findings appropriate, and this court in Ling Yang v. Mukasey said that, or upheld an agency decision in the alternative. Do you have any authority that says that they lack jurisdiction to do what? Not beyond my- A rule, an agency decision in this court seem to have approved? I do not, Your Honor. Okay. I would rely- I just wanted to make sure I wasn't overlooking anything. Thank you. USC 1158 D6 states that once a frivolous finding has been entered, the noncitizen shall be permanently ineligible for any benefits. The immigration judge had no inherent power to deny or grant an adjustment of status application after making that finding. And I would also rest on our previous argument that I really believe his alternative decision is completely intertwined with his frivolousness finding. Thank you, Your Honor. Thank you, Counsel. I'll take the case under advisement. The next argument on the calendar for today is number 21-1686 and 21-1712, SEC v. Ahmed. Mr. Levy is first. Thank you, Your Honor. May it please the Court. I represent Mr. Ahmed and Mr. Unikowski represents the relief defendants, and I'm going to go first today. The judgment below should be reversed on, from the perspective of Mr. Ahmed, three grounds. The first is that the Court retroactively applied a new statute of limitations that Congress enacted despite an overruling a defense, a complete defense based on the statute of limitations for disgorgement that was not only vested but adjudicated below without the SEC having filed a cross-appeal. The second point is that the Court below, within the limitation period that existed before the NDAA, improperly imposed a double charge and required Mr. Ahmed to disgorge more than the amount that he had obtained in ill-gotten gains. And the third point I would like to address today, time permitting, is that the entry of summary judgment in the context where Mr. Ahmed was deprived of the opportunity to see the evidence against him and to oppose it because of redactions made to the record and the fact that he was unrepresented amounts to a violation of due process and of Rule 56 and is not warranted by the Fugitive Disentitlement Doctrine. Before you get into those, can I ask you, if we were to disagree with you and affirm, would your client submit to the judgment below? My client's assets were seized, so I don't think there's a question as to that, Your Honor. I know that he's currently in India, but that has not been raised. I only represent my client in this appeal, and no question has been raised as to whether the assets, putting in mind the arguments of the relief defendants, are sufficient. So there's been no argument that any of his actions have caused or were intended to evade the judgment and the ability of the SEC to execute on the judgment. With respect to the first point, the absence of a cross appeal, this Court and the Supreme Court have held that although an appellee may urge in favor of affirmance any ground pressed below, it may not on appeal, absent a notice of appeal or cross appeal, seek an enlargement of the money that it obtained below or of the equitable relief that it obtained. Yet that is precisely what happened in this case. The Court below held that there was a five-year limitation period at the time of the judgment, on summary judgment and on remedies in 2018. That was vested, adjudicated, conceded by the SEC. The NDAA then purported to, or did in fact, adopt a longer limitation period in the NDAA. But the statute itself, although it says it applies to pending cases, did not purport to alter the jurisdictional and longstanding rules that absent a cross appeal, an appellee may not seek enlargement of the remedy that it obtained below. Green law, for example, says that a clear statement is required and looks at the plain error rule, Rule 52B, and says that that did not evince an intent to overcome. You raised these arguments before this Court before and there was a motion order that essentially ordered the district, or said to the district court, you know, to recalculate under the NDAA. Doesn't that, isn't that law of the case, doesn't that implicitly mean that we rejected arguments you raised below?